```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA


ROZEL OPERATING COMPANY                     CIVIL ACTION

VERSUS                                      NO: 16-1687

CROWN POINT HOLDINGS LLC                    SECTION: "J"(1)
ET AL.
```

## ORDER & REASONS

Before the Court is a *Motion to Dismiss for Failure to State a Claim and Alternative Motion for Partial Summary Judgment* **(Rec. Doc. 5)** filed by Defendant Crown Point Holdings LLC, an opposition thereto (Rec. Doc. 19) filed by Plaintiff Rozel Operating Company, and Defendant's reply (Rec. Doc. 25). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from an agreement concerning marine salvage of a barge. In 2007, Rozel Operating Company ("Rozel") chartered two barges from Cashman Equipment Corporation ("Cashman") for use as "breaker barges" near a natural gas platform operated by Rozel in the Gulf of Mexico. The two barges were intended to be partially submerged in order to shield the platform from waves. Rozel attempted to deballast the two barges to return them to Cashman but was only able to deballast one of the barges.

Rozel could not deballast the second barge, and it has remained on the seabed as wreckage.

Cashman filed suit against Rozel, and the parties tried the case before a jury in 2012. The jury returned a verdict substantially in favor of Cashman. The district court then entered a judgment, in which Rozel was adjudged obligated to salvage the barge from the bottom of the Gulf of Mexico. (Rec. Doc. 1-3, at 2.) The Fifth Circuit affirmed the judgment in May 2014. *See Cashman Equip. Corp. v. Rozel Operating Co.*, 569 F. App'x 283 (5th Cir. 2014).

In September 2014, Rozel entered into a written agreement with Crown Point Holdings LLC ("Crown Point") for the salvage of the barge on a "no cure, no pay" basis. (Rec. Doc. 1-5.) The barge would be separated into two wing-wall sections. The agreement requires Crown Point to use "commercially reasonable efforts" to have the first wing-wall section afloat within five days from commencement of work and to use commercially reasonably efforts to have the second wing-wall section afloat within ten days from the salvage of the first. *Id.* The agreement provides that the total cost to complete the salvage is $850,000. *Id.* at 2. The parties then executed an amendment to the salvage agreement in December 2014, which amends the total cost to complete the salvage to be $1,050,000. (Rec. Doc. 1-6.) The amount would be escrowed and disbursed according to the terms of payment.

The terms of payment are set forth in the original agreement and the amendment (collectively "Salvage Agreement"). The Salvage Agreement provides that a mobilization and demobilization fee ("Mobilization Fee") shall be paid to Crown Point upon full execution of the agreement by all parties, and it shall be considered "earned" by Crown Point upon actual mobilization. (Rec. Doc. 1-5, at 2.) Further, Salvage Agreement states that the Mobilization Fee "shall be non-refundable for any reason." *Id.* In the amended agreement, the parties acknowledged that the Mobilization Fee had been earned and paid in full. (Rec. Doc. 1-6, at 1.)

The Salvage Agreement also sets forth separate terms for the salvage of each wing-wall unit on a "no cure, no pay" basis. First, Rozel shall pay $400,000 to Crown Point only if one of the two wing-wall units is removed from its current location and brought to shore ("First Completion"). *Id.* If for any reason First Completion is unable to be attained, Crown Point will retain the Mobilization Fee but shall not be entitled to any portion of the remaining $900,000 balance. *Id.* Second, in the event First Completion is attained, Rozel shall pay the remaining $500,000 to Crown Point only if the second wing-wall unit is removed from its current location and brought to shore ("Second Completion"). *Id.* If for any reason Second Completion is unable to be attained, Crown point will retain the Mobilization Fee and the $400,000 paid for

3

First Completion, but shall not be entitled to any portion of the remaining $500,000 balance. *Id.*

Work commenced under the Salvage Agreement in late 2014 or early 2015. On January 13, 2015, counsel for Crown Point represented to Rozel in writing that that Crown Point had "successfully floated and removed the first barge from the salvage location," and therefore achieved First Completion. (Rec. Doc. 1-7.) Rozel then authorized release to Crown Point of $400,000 of the escrow funds. On July 22, 2015, after the extended deadline for Second Completion had passed, Rozel issued written notice to Crown Point confirming termination of the Salvage Agreement and demanding return of the remaining escrow funds. (Rec. Doc. 1-11.)

Rozel filed suit on February 29, 2016, after Crown Point refused to authorize release of the remaining portion of funds to Rozel. (Rec. Doc. 1.) Rozel seeks judicial enforcement of the Salvage Agreement and release of the remaining escrow funds. *Id.* at 9. In addition, to the extent that Crown Point failed to achieve First Completion, notwithstanding the sworn affidavit of Crown Point and written representations by its attorney to the contrary, Rozel claims that such failure would amount to breach of contract, bad faith, misrepresentation, and fraud. *Id.* Accordingly, Rozel claims that Crown Point is indebted to Rozel in the amount of $400,000 already paid to Crown Point in reliance on the representations of having achieved First Completion, in addition

4

to the $150,000 Mobilization Fee, plus attorney's fees and costs for Crown Point's breach. *Id.* at 13.

Rozel also asserts claims against International Metal Recycling LLC ("IMR"), a subcontractor used by Crown Point to assist in the salvage. IMR filed a lien against two wells, claiming it is owed $876,000. *Id.* at 11. Rozel claims that the lien is invalid and seeks damages arising from the alleged wrongful filing of the lien. *Id.* at 12.

Crown Point filed the instant *Motion to Dismiss for Failure to State a Claim and Alternative Motion for Partial Summary Judgment* **(Rec. Doc. 5)** on April 6, 2016. Rozel opposed the motion on May 10, 2016, and Crown Point filed a reply. The motion is now before the Court on the briefs.

## PARTIES' ARGUMENTS

Crown Point contends that Rozel's claim for the return of the $150,000 Mobilization Fee should be dismissed for failure to state a claim for which relief can be granted. (Rec. Doc. 5-3, at 3.) Crown Point claims that the Salvage Agreement clearly demonstrates that both parties intended the Mobilization Fee to be earned and nonrefundable once Crown Point and Rozel fully executed the agreement and actual mobilization occurred. *Id.* at 4. According to Crown Point, the Mobilization Fee cannot be refunded even if Crown Point did breach the Salvage Agreement, because both parties agreed that the fee would be nonrefundable for any reason. *Id.* Further,

5

Crown Point contends that there are no genuine issues of material fact as to whether Crown Point is indebted to Rozel for the Mobilization Fee, and judgment should be entered in Crown Point's favor as to that specific issue. *Id.* at 5.

In response, Rozel contends that the facts pleaded in its complaint sufficiently state a claim for "bad faith breach, fraud, rescission, dissolution, damages, and return of the $150,000 mobilization fee" and that genuine issues of fact preclude summary judgment. (Rec. Doc. 19, at 10.) Rozel argues that Crown Point broke the wing-wall units apart into many pieces rather than float the units out as contemplated by the parties and required by the Salvage Agreement and failed to retrieve them, making future salvage operations much more difficult. *Id.* at 6, 10. Further, Rozel asserts that Crown Point and its counsel misrepresented that Crown Point had "successfully *floated*" the first wing-wall unit and that Second Completion was nearly complete. *Id.* According to Rozel, a sonar survey shows that significant remnants of the first unit remain on the seabed. *Id.* at 8. Moreover, Rozel argues that Crown Point's motion should be denied as premature because it was filed with Crown Point's answer, without any benefit of discovery. *Id.* at 4.

**LEGAL STANDARD**

### A. Motion to Dismiss for Failure to State a Claim

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th

7

Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

B.   **Motion for Partial Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

The Salvage Agreement is a maritime contract. A maritime contract is one "relating to a ship in its use as such, or to

commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010). To determine whether a contract is maritime, courts look to the essence of the contract and assess "whether the services performed under the contract are maritime in nature." *Id.* It is well established that a salvage contract is a maritime contract. *See, e.g.*, 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3-10 (4th ed. 2004).

When interpreting maritime contracts, federal admiralty law applies. *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013). "To the extent that it is not inconsistent with admiralty principles, however, state contract law may be applicable to maritime contracts." *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995). Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). Where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law. *Id.* at 243. Here, the Salvage Agreement provides that it shall be governed by Louisiana law and general maritime

10

law, and neither party contends that application of Louisiana law would be unjust.

Rozel seeks to recover the Mobilization Fee on account of Crown Point's alleged breach of contract. The essential elements of a claim for breach of contract under Louisiana law are "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011). "When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages." La. Civ. Code art. 2013. "Upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made." *Id.* art. 2018. However, "[i]f partial performance has been rendered and that performance is of value to the party seeking to dissolve the contract, the dissolution does not preclude recovery for that performance, whether in contract or quasi-contract." *Id.*

Here, Rozel has alleged the existence of a contract, Crown Point's breach thereof, and damages. The Salvage Agreement, which is attached as an exhibit to Rozel's Complaint, obligates Crown Point to use commercially reasonable efforts to have the two wing-wall sections afloat within a specified amount of time. (Rec. Doc.

11

1-5, at 1-2.) If Crown Point is unable to salvage one or both of the wing-wall sections, then Crown Point is not entitled to the corresponding portion of escrow funds. Rozel alleges that Crown Point breached the Salvage Agreement by misrepresenting to Rozel that First Completion had been achieved, and by refusing to authorize release of the portion of the escrow funds payable for achieving Second Completion once Rozel terminated the agreement. (Rec. Doc. 1, at 9.) Accordingly, Rozel has stated a claim for breach of contract.

The narrow issue of whether Rozel can recover the Mobilization Fee is intertwined with and dependent upon whether Crown Point breached the contract. If Crown Point breached the contract, then Rozel has the right to seek judicial dissolution. Upon dissolution, Rozel and Crown Point "shall be restored to the situation that existed *before the contract was made*." La. Civ. Code art. 2018 (emphasis added). In other words, the Mobilization Fee will be returned to Rozel and Crown Point may then seek to recover for its mobilization efforts by contract or quasi-contract. *Id.* Neither party has briefed this issue and the record at this stage of the litigation is insufficient for summary judgment.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss for Failure to State a Claim and Alternative Motion for Partial Summary Judgment* **(Rec. Doc. 5)** is **DENIED**.

New Orleans, Louisiana, this 26th day of May, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE