```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


ROZEL OPERATING COMPANY                    CIVIL ACTION

VERSUS                                     NO: 16-1687

CROWN POINT HOLDINGS,                      SECTION: "J"(1)
LLC, ET AL.
```

### ORDER & REASONS

Before the Court are two motions. First is Rozel Operating Company's ("Rozel") *Motion to Exclude the Testimony of Charles R. Norman* **(R. Doc. 70)**, an opposition thereto filed by International Metal Recycling, LLC ("IMR") **(R. Doc. 76)**, and reply filed by Rozel **(R. Doc. 83)**. Second is Rozel's *Motion for Summary Judgment* **(R. Doc. 73)**, an opposition thereto filed by IMR **(R. Doc. 77)**, a reply by Rozel **(R. Doc. 84)**, and a surreply by IMR **(R. Doc. 88)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Rozel's *Motion for Summary Judgment* is **GRANTED**, and Rozel's *Motion to Exclude the Testimony of Charles R. Norman* is **DENIED AS MOOT**.

### FACTS AND PROCEDURAL BACKGROUND

This action arises out of the breach of a salvage agreement. In 2007, Rozel chartered a barge known as the JMC 109 from Cashman Equipment Corporation ("Cashman"). (R. Doc. 1 at 3.) The JMC 109 is comprised of two barge units, each made of steel plated wing wall sections from a World War II Navy dry dock, measuring one-

hundred and five feet in length, forty-eight feet in height, and eighteen feet in depth. (R. Doc. 1-5, at 1.) The JMC 109 was intentionally ballasted so that it sat on the seabed in shallow water off the coast of Cameron, Louisiana in the Gulf of Mexico. (R. Doc. 1 at 3.) Due to a crack in the hull, the JMC 109 was unable to be recovered and has since remained on the seabed. *Id.* In 2008, Cashman filed suit against Rozel seeking various damages for the loss of the JMC 109. *Id.* On January 18, 2013, District Judge Mary Ann Vial Lemmon issued a judgment and ordered Rozel to retrieve the JMC 109 from the bottom of the Gulf of Mexico. (R. Doc. 39-4.) To comply with the order, Rozel entered into a written agreement with Crown Point to salvage the JMC 109. *Id.* Unbeknownst to Rozel, in early January, 2015, Crown Point hired IMR to perform work related to the removal of the JMC 109. After making several unanswered inquiries as to the status of the project, Rozel determined that Crown Point could not retrieve the JMC 109. On July 22, 2015, Rozel gave formal notice that the salvage agreement was terminated. (R. Doc. 39-19.) Sometime thereafter, Rozel determined that Crown Point had hired IMR to perform work related to the retrieval of the JMC 109.

On February 29, 2016, Rozel filed suit against Crown Point and IMR. (R. Doc. 1.) IMR filed a Counterclaim against Rozel seeking payment for maritime salvage activities and services rendered in connection with retrieving the JMC 109 in the amount

of $876,000.[1] (R. Doc. 7 at 13-14.) IMR also filed an oil and gas lien on two oil and gas wells in Cameron Parish, Louisiana pursuant to Louisiana Revised Statute § 9:4861, *et seq.,* also known as the Louisiana Oil Well Lien Act ("LOWLA"), which IMR believed were owned by Rozel. *Id.* at 14; *see also* (R. Doc. 69-28.) On November 15, 2016, Rozel filed a *Motion for Summary Judgment* against IMR.[2] (R. Doc. 69.)[3] In short, Rozel argues that IMR has no claim for a monetary judgment against Rozel, nor does IMR have a LOWLA privilege. (R. Doc. 73-1.) In opposition, IMR argues, *inter alia*, that it has satisfied the basic requirements for a LOWLA privilege, and Rozel is liable to IMR in equity. (R. Doc. 77.) Rozel also filed a *Motion in Limine to Exclude the Testimony of Charles R. Norman* (R. Doc. 70.) Rozel argues that Mr. Norman's opinions and testimony should be excluded because they constitute impermissible legal opinions and conclusions which he is unqualified to give, because his opinions lack the requisite methodology and reliability, and his opinions are unhelpful to the Court as the finder of fact in this matter. (R. Doc. 70-2.)  Rozel's motions are now before the Court on the briefs and without oral argument.

---

[1] This amount is contested by Crown Point who asserts that its verbal agreement with IMR was for no more than $250,000. *See* (R. Doc. 69-3 at 10.) However, Rozel does not seek resolution of this issue in its motion for summary judgment. *Id.* at n.4.
[2] IMR asserts that Rozel's motion for summary judgment does not address the "equitable relief" available to, and prayed for by, IMR. (R. Doc. 77 at 1, n.1.)
[3] Rozel's initial motion for summary judgment was Record Document No. 69. However, Rozel later filed an amended Motion for Summary Judgment. (R. Doc. 73.) Rozel's amended motion corrected a minor typographical error, but did not change the substance of its original motion.

**PARTIES' ARGUMENTS**

1. **Rozel's Motion for Summary Judgment**

   a.   **Rozel's Arguments**

   First, Rozel argues that IMR is not entitled to a money judgment pursuant to LOWLA. (R. Doc. 73-1 at 11.) Rozel asserts any alleged rights pursuant to LOWLA are strictly *in rem*, and that any claim for unpaid invoices may only be brought against Crown Point. *Id.* at 12. Second, Rozel argues that IMR does not have a LOWLA privilege. (R. Doc. 73-1 at 13.) Rozel asserts that IMR is not a "contractor," Rozel was not an "operator," IMR did not have a "subcontract," and IMR's work was not for "operations" contracted for by Rozel, all as defined under the act. *Id.* at 13-16, 21-22. Further, Rozel argues that IMR's lien statement is "facially bogus and contains blatant misrepresentations" and thus invalid. *Id.* at 22-24. Rozel further asserts that it is entitled to rescission or dissolution of the salvage agreement, which in turn dissolves IMR's alleged subcontract. *Id.* at 19-21.

   b.   **IMR's Arguments**

   IMR argues that it has satisfied the basic requirements for a valid lien under LOWLA. (R. Doc. 77 at 5.) IMR asserts that the lien is in writing, signed on behalf of IMR, provides IMR's name and address, sets forth the amount claim to be owed and the nature of the obligation, identifies that Rozel as the debtor, and identifies the name of the operator listed by the Louisiana

Department of Natural Resources. *Id.* at 7-12. Further, IMR argues that the services it provided in attempt to retrieve the JMC 109 constitute "operations" as defined under LOWLA, and that Rozel was the "operator" at the time IMR conducted such operations. *Id.* at 13-16. Finally, IMR argues that Rozel is liable in equity under several theories. *Id.* at 17. IMR argues that Rozel is liable in equity under the "judicial estoppel doctrine." *Id.* at 18. Second, IMR argues that the "No Cure/No Pay" provision of the agreement between Rozel and Crown Point is inapplicable to IMR, because IMR was not a signatory to that agreement. *Id.* at 18-19. Finally, IMR argues that Crown Point was Rozel's mandatary, that Crown Point exceeded its authority by entering into an agreement with IMR to retrieve the JMC 109, but that Rozel ratified Crown Point's exceeded authority by telling Joseph Dardar that it was sufficient to cut the JMC 109 only to the mud line. *Id.* at 22. IMR argues that it is evident that Rozel told Mr. Dardar this because Rozel has now hired Zealous Energy Services, LLC ("Zealous") to finish removing the JMC 109 from the mud line only. *Id.*

    **c.  Rozel's Reply**

In response to IMR's Opposition, Rozel asserts that IMR has not contested that a LOWLA privilege is strictly *in rem* and creates no personal obligation. (R. Doc. 84 at 1.) Further, Rozel contends that IMR has failed to cite to any legal authority to support its "equity" claim, and that such claim should be dismissed because "a

5

subcontractor has no cause of action for a money judgment against a well owner or operator for payment of invoices by a general contractor to a subcontractor." *Id.* at 2. Rozel also argues that IMR's "mandate" claim is wholly unsupported by its conclusory allegations and statements which are unsupported by the record evidence. *Id.* As to IMR's alleged LOWLA lien, Rozel argues that IMR has failed to prove that it is a LOWLA "claimant" or "contractor" because it did not have a subcontract with a contractor of an "operator" to perform "operations." *Id.* at 4.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at

1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

It is well settled under Louisiana law that the privilege created by La. Rev. Stat. § 9:4861—LOWLA—is strictly *in rem*, against the property (lease or equipment) only, and no personal liability is created by the privilege on the part of the owners of the property subject to the privilege. *Bordelon Marine LLC v. Devon Energy Prod. Co., L.P.*, No. 14-1784, 2015 WL 1509493, at *3 (E.D. La. April 1, 2015) (citing *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 94-1275 (La. 7/3/95); 657 So. 2d 1307, 1315). IMR's counterclaim states:

> To date, IMR has not been fully compensated for the maritime salvage activities it has performed in connection with retrieving the JMC 109 from the oil and gas well site. **IMR now seeks to secure payment for the maritime salvage activities and services it has performed in connection with retrieving the vessel JMC 109 from the oil and gas well site in the amount of $876,000**. On January 12, 2016, IMR filed an oil and gas lien against Rozel, Crown Point and others in Cameron Parish, Louisiana. The labor and services provided at the oil and gas well site by IMR [for] Rozel, Crown Point and others entitle IMR to a lien and privilege in accordance with La. R.S. 9:4861 et seq. . . . **As an unpaid subcontractor which performed maritime salvage services at the oil and gas well site, IMR is entitled to seek recovery of its unpaid invoices from Rozel and Crown Point**. Additionally, as an unpaid subcontractor which performed maritime salvage services at the oil and gas well site, IMR is entitled to seek compensation through sequestration of the oil and gas revenues coming from the two above-referenced wells.

(R. Doc. 7) (emphasis added). It appears that IMR's complaint seeks a personal money judgment against Rozel and Crown Point pursuant to the lien it alleges it has over the oil and gas well sites

8

listed in its counterclaim. However, as clearly explained by this Court in *Bordelon Marine LLC v. Devon Energy Production, Co.*, to the extent that IMR seeks a personal money judgment from Rozel pursuant to its alleged LOWLA lien, this claim must be dismissed. *See Bordelon*, 2015 WL 1509493, at *3 (citing *Guichard Drilling*; 657 So. 2d at 1315).

The next issue is whether IMR has a LOWLA privilege. Under LOWLA, a subcontractor may assert a lien over the property of an operator or lessee in order to secure "the price of his contract for operations." La. Rev. Stat. § 9:4861(10); La. Rev. § 9:4862(A)(1). First, to have a LOWLA privilege, a subcontractor must contract with a contractor of an operator. Rozel argues that it is not an "operator," as defined by LOWLA; thus, when Crown Point contracted with IMR this did not give IMR a privilege or allow IMR to assert a lien pursuant to LOWLA. *See* (R. Doc. 69-3 at 14.) To be an operator under LOWLA, Rozel must be a "lessee." <u>See</u> La. Rev. Stat. § 9:4861(7). A lessee is a person who owns an operating interest. La. Rev. Stat. § 9:4861(6). An "operating interest" is a mineral lease or sublease of a mineral lease, or an interest in a lease or sublease that gives the lessee, either singly or in association with others, the right to conduct the operations giving rise to the claimant's privilege. La. Rev. Stat. § 9:4861(5)(a). A mineral lease or sublease or an interest in the lease or sublease is not an "operating interest" if an owner has

9

divested himself of the right to conduct the operations giving rise to the claimant's privilege by assignment, sublease, or another form of mineral right before the claimant's privilege is established. La. Rev. Stat. § 9:4861(5)(b). "Operations" are every activity conducted by or for a lessee on a well site for the purpose of:

> (i) Drilling, completing, testing, producing, reworking, or abandoning a well.
>
> (ii) Saving, treating, or disposing of hydrocarbons or other substances produced from a well.
>
> (iii) Injecting substances into the earth to produce or enhance the production of hydrocarbons.

La. Rev. Stat. § 9:4861(4)(a)(i)-(iii).

> IMR's Lien Affidavit listed two wells:
>
> Well Number 2:
> Well Serial Number: 237827, Cameron Parish, Creole Offshore Field (3008), Well Name VUB: SL 18251, No. 002. **Operating interest currently held by Northstar Offshore Group, LLC, effective 11/01/2012** by acquisition from Forza Operating, LLC, **who acquired such operating interest on 3/01/2010 from Rozel Operating Company**. . . .
> Well Number 3:
> Well Serial Number: 237828, Cameron Parish, Creole Offshore Field (3008), Well Name VUB: SL 18251 No. 003. **Operating interest currently held by Northstar Offshore Group, LLC, effective 11/01/2012** by acquisition from Forza Operating, LLC, **who acquired such operating interest on 3/01/2010 from Rozel Operating Company**. . . .

(R. Doc. 69-28 at 1) (emphasis added). Rozel argues that throughout the time IMR and Crown Point performed work to remove the JMC 109,

10

Rozel neither owned an operating interest in any of the wells or operating interests referred to in IMR's Lien Affidavit (i.e., was not an "operator"), nor did the work performed by IMR constitute "operations." (R. Doc. 69-3 at 15.) In fact, Rozel argues that not only did it not own the two wells listed above, but that Rozel's ownership and operatorship for all wells in the Creole Offshore Field was transferred from Rozel to Forza Operating, LLC ("Forza") as of March 1, 2010. (R. Doc. 69-3 at 15.) Rozel has produced documents demonstrating that Rozel conveyed its interest in its wells located in the Creole Field effective March 1, 2010. (R. Doc. 69-15 at 22-55.) Further, Rozel argues that the JMC 109 was never "used in the construction and maintenance of" the wells listed in IMR's Lien Statement. (R. Doc. 69-3 at 22.) Rather, the JMC was used as a breakwater barge on a different state lease, No. 18423, in connection with a completely different well, Well No. SL 18423. *Id.*

IMR concedes that it "erroneously identifie[d] two wells which are unrelated to the sinking of JMC 109" in its Lien Affidavit. (R. Doc. 77 at 10.) However, IMR contends that such error is inconsequential to the validity of its lien because "LOWLA only requires that the lien 'apprise' recipients like Rozel of the scope and nature of the lien." *Id.* Specifically, IMR argues that a privilege is not invalid if it fails to contain all of the information required by La. Rev. Stat. § 9:4861(A), as long as the

11

statement of privilege "fairly apprises the recipient or person against whom the privilege is asserted of the privilege claimed and of the operating interest or other property upon which the privilege is claimed." (R. Doc. 77 at 10.)

The Court finds that IMR does not have a lien or privilege under LOWLA. First, IMR has failed to produce any evidence that Rozel was an operator, lessee, or possessed an operating interest in the two wells listed in IMR's Lien Affidavit at the time IMR attempted salvage operations on the JMC 109. To the contrary, Rozel produced the affidavit of William Rogers, the President of Rozel Operating Company, who asserts that the JMC 109 was never utilized in the operation, construction, maintenance, or otherwise anyway connected with the two wells listed in IMR's Lien Affidavit. (R. Doc. 84 at 5; R. Doc. 69-14 at 3.) Rather, the JMC 109 was utilized as a breakwater in connection with Well No. SL 18423, No. 2, a completely different well on a different lease. *Id.* Further, Rozel asserts that it was not the operator, did not own an operating interest, a lease or sublease, and was not a lessee of either of the wells listed in IMR's Lien Affidavit, nor of Well No. SL 18423 Nos. 2 or 2D when: (1) Rozel signed the Salvage Agreement with Crown Point on September 2, 2014; (2) When IMR was hired in January 2015; or (3) at any time thereafter, including throughout all work performed by Crown Point and IMR in connection with the JMC 109. *Id.* Finally, Rozel produced evidence that it transferred any

12

operatorship and ownership interest or operating interest in the wells listed in IMR's Lien Affidavit, and Well No. SL 18423 Nos. 2 and 2D to Forza as of March 1, 2010. *Id.; see also* (R. Doc. 69-15 at 1-2, 6-7, 22-28, 35).

The only real argument IMR raises in opposition is that the lien "apprises" Rozel of the scope and nature of the lien. (R. Doc. 77 at 10.) However, even assuming that identifying an entirely different well may "apprise" Rozel of the scope and nature of the lien asserted by IMR, pursuant to La. Rev. Stat. § 9:4868(B)(1) a well is "adequately identified" if the statement of privilege gives: (1) the name and serial or other identification number of the well; and (2) the name of the field where the well is located as is designated by the records of the commissioner of conservation. IMR does not argue, let alone produced evidence, that it "adequately identified" the wells it intended to lien. IMR's lien did not produce the correct serial number or other identification number of the correct well. Further, as explained above, IMR has produced no evidence that Rozel was an operator, lessee, or had an operating interest in any well within the Creole Field at the time of salvage operations.

Finally, Rozel argues that IMR's "equity" claims should be dismissed. (R. Doc. 84 at 1.) IMR first argues that Rozel is liable in equity under the "judicial estoppel doctrine." (R. Doc. 77 at 17-18.) IMR argues that it has removed significant portions of the

13

JMC 109 by cutting the vessel from the seabed, and "Rozel has accepted IMR's success." *Id.* at 17. IMR contends that after Rozel terminated the salvage agreement it retained Zealous to finish cutting the JMC 109 above the mud line, and that from July, 2015 to August 26, 2016 no efforts were made to remove the JMC 109. *Id.* Thus, IMR contends that Rozel is currently trying to take advantage of the work IMR performed to get cash out of the registry in the Middle District of Louisiana in the *Cashman* litigation. *Id.* IMR contends that Rozel's counsel submitted a report to Judge Lemmon in the *Cashman* suit representing that a majority of the JMC 109 has been removed from the seabed, with only some remnants remaining. *Id.* IMR argues that Rozel is attempting to avoid liability for IMR's work and that it should be held liable under the judicial estoppel doctrine. *Id.* at 18.

While the judicial estoppel doctrine is a claim in equity, it is of no use to IMR in its attempt to recover its unpaid invoices against Rozel. Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (internal citations and quotations omitted). In order for judicial estoppel to apply and

14

prevent a party from asserting contrary positions in litigation, two requirements must be satisfied: (1) the position of the party to be estopped must be clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position. *Id.* at 206; *see also Blankenship v. Buenger*, No. 15-50974, 2016 WL 3538829, at *4 (5th Cir. June 28, 2016). IMR has failed to articulate how this doctrine holds Rozel liable for IMR's unpaid invoices, gives IMR a privilege under LOWLA, or even address whether Rozel's position is "clearly inconsistent with its previous one" and that "the court accepted that previous condition." In fact, IMR has failed to cite to, and the Court is unable to locate, a single case in which this doctrine was used to hold a party personally liable for an unpaid debt. Accordingly, IMR's claim in equity under the judicial estoppel doctrine is dismissed.

    IMR's second "equity" argument is that Crown Point was Rozel's mandatary. (R. Doc. 77 at 21.) IMR argues that Crown Point exceeded the authority it was granted by Rozel by entering into an agreement with IMR to cut the JMC 109 out of the water, and a mandatary who exceeds his authority is personally bound to the third person with whom he contracts unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract. *Id.* at 22. Thus, IMR argues that Rozel is liable for IMR's unpaid invoices because Crown Point

15

exceeded its authority and Rozel ratified Crown Point's action when Rozel told Joseph Dardar that it was sufficient to cut the JMC 109 off at the mud line.

First, IMR has failed to produce any summary judgment evidence that there was a contract between Crown Point and Rozel whereby Rozel conferred authority on Crown Point to transact one or more affairs for Rozel. *See* La. Civ. Code art. 2989. Accordingly, IMR's argument under Louisiana Civil Code Article 3020 fails. Further, IMR's arguments under Louisiana Civil Code Article 3019 are unpersuasive. These arguments presuppose that a principal-mandatary relationship existed. Again, IMR has produced no evidence of such relationship, and the Court is not bound to accept unsupported arguments. *See Celotex*, 477 U.S. at 323-26.

Finally, IMR's Counterclaim alleged that it is in possession of scrap metal recovered from the JMC 109 during retrieval operations, and that it seeks a judicial order permitting it to sell the scrap metal to satisfy its outstanding unpaid invoices. (R. Doc. 7 at 16.) Assuming that this is an "equity" argument, the Court shall defer ruling. This issue was neither fully briefed by the parties nor has IMR filed a motion seeking permission from Court to sell the scrap metal.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Rozel Operating Company's *Motion for Summary Judgment* **(R. Doc. 73)** is **GRANTED**.

**IT IS FURTHER ORDERED** that International Metal Recycling, LLC is required to remove the liens on the oil wells at issue **within thirty (30) days** of the entry of this Order.

**IT IS FURTHER ORDERED** that in light of the Court's ruling on Rozel's *Motion for Summary Judgment* that Rozel's *Motion to Exclude the Testimony and Opinions of Charles R. Norman* **(R. Doc. 70)** is **DENIED AS MOOT**.

New Orleans, Louisiana this 4th day of January, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE